(Decided 20th April, 1868.)

JAMES E. TYSON *vs.* THE COMMISSIONERS OF BALTIMORE COUNTY.

*Evidence — Commissioners to Lay out and condemn Public roads.—Duty of County Commissioners to keep the Public roads in proper repair.*

In an action by T. against the Commissioners of Baltimore county, to recover damages for an injury to his mill-dam, &c., at Ilchester, from an overflow of the Patapsco, and which injury it was alleged was caused by

the erection of a wall, by the defendants, upon the public road on the Baltimore county side of said stream, contiguous to and above the dam. HELD:

That it was competent for the defendants to offer in evidence the Act of 1831, chap. 27, authorizing the building of a bridge at Ilchester, and which recognized the road in question as a public road, when the same was accompanied by proof that E. under whom the plaintiff claimed title, was cognizant of the application to the Legislature for the passage of the law, knew and approved of its provisions, and acted under it as one of the Commissioners. Such testimony was evidence of an admission by E. that the road was a public road, and it also showed a recognition of that fact by the Legislature.

That the record of proceedings in 1835, for the condemnation of the road, was also admissible as evidence on the part of the defendants.

That the opinions of the three persons appointed by the County Commissioners to examine the wall complained of, as to its probable effect upon the property of the plaintiff, was not admissible evidence on the part of the plaintiff for the purpose of proving, that but for the said wall, the water when high could escape around the abutment of the dam, and also that said wall would injure or damage said dam or mill property.

After the final ratification of the return of Commissioners appointed to lay out and condemn a public road, their proceedings cannot be collaterally impeached, either on the ground that no damages or insufficient damages had been valued and ascertained by the Commissioners.

The law casts upon the County Commissioners not only the right but the duty to protect the public roads from injury, and keep them in proper repair for the use of the public: individual rights must be held and enjoyed in subordination to those of the public. And if by reasonable or necessary improvements to a highway, a party suffers consequential damages, it is *damnum absque injuria*, and no right of action accrues to him.

APPEAL from the Circuit Court for Howard County.

This action was instituted on the 17th of August, 1860, in the Circuit Court for Baltimore county, by the appellant to recover damages from the appellees for the destruction of his mill-dam, and injury to his mill, &c., at Ilchester, by a flood in the Patapsco river, which occurred in the month of May previous. The declaration charged that the defendants, by

building a wall on the bank of the stream in Baltimore county, at a point on said stream above said mill, and the dam therewith connected, where the water of the stream was accustomed to escape in freshets, caused the stream when swollen by rain, to wash away and destroy the plaintiff's mill-dam, so that his mill could not be worked for a long space of time, to the great damage of the plaintiff, &c. Upon the application of the plaintiff, the case was removed to the Circuit Court for Howard county, where it was tried at the September Term, 1862, and judgment rendered for the defendants.

The dam in question was erected by the plaintiff, in the year 1854, at a place where no dam had been before. A former dam of the same mill, built by the father of George Ellicott, in 1827, had existed much higher up the stream, and had been suffered to decay. The new one was placed about a hundred yards lower down, close to the mill, and below a bend in the river, for the purpose of securing a flow of water towards the right bank or Howard county side of the Patapsco, the mill being on that side. The road in question running along the left or Baltimore county bank of the Patapsco, had been used as a public road ever since the year 1827 or 1828, when the Baltimore and Ohio Rail Road Company removed part of a large rock, known as Buzzard's rock, which had previously obstructed all passage of vehicles down that side of the river. In 1836, in order that said road might be thoroughly opened and thereafter kept in repair, it was condemned and opened as a public county road, by proceedings founded on an application of Jonathan Ellicott & Sons, and a number of other citizens; and since that time, the road has been regularly worked and mended by Supervisors of Roads of Baltimore county. The erection of the said dam on the present site, so much further down than the old one, raised the water opposite the mill, and between the new and old sites of the dam, some five or six feet, and to within a few inches of the surface of the road, and caused it to encroach

considerably upon the original road bed. William Marr, who at the time the dam was building, was supervisor of the road, thinking that the erection of the dam on the side of the road, was calculated to injure the road at that place, so represented to the plaintiff, who said: "Not so much as that rock there, (pointing to one in the road a little lower down,) and if you will attend to that rock, I will attend to the dam and make it all right." The road was low at the dam, but the plaintiff never raised the road. The rock was afterwards taken out.

Neither the plaintiff nor Ellicott, his lessor, however, did any thing for the protection of the road, and the consequence was that whenever a freshet occurred, the road was injured, and on one occasion was rendered impassable at this point. Some effort appears to have been made to hold George Ellicott responsible for the erection of the dam, by presentment to the Grand Jury. Ellicott himself, when remonstrated with for the encroachments upon the road, remarked to the road authorities, "why don't you widen it, and make a good road?" The road was accordingly widened under the direction of the supervisor. The supervisor, under the necessity of the case, attempted to remedy the evil by erecting a rubble wall. On the 12th of June, 1858, a freshet, which also displaced the corner of the dam, washed away the rubble wall, and totally destroyed the road, making it impassable even on horseback. A special appropriation of money was made by the County Commissioners; and Columbus E. Shipley, the then supervisor, caused a more substantial wall to be erected along the road, in the same place as the original wall, and inside of the original edge of the road. This wall, which was considerably below the site of the old dam built in 1827, and somewhat above the dam built in 1854, was an open dry wall. It was raised to the height of about three feet, and was intended to be raised higher, but, complaint being made by George Ellicott, nothing more was done. In May, 1860, a heavy freshet carried way a portion of the dam, next the Howard county

side.   The dam, as constructed in 1854, was run into the road bed some distance and fastened to the rock.   A freshet, which occurred the same year, shortly after it was erected, broke it away, the rock to which it was attached proving to be shelly.   This was before the wall in question was built. In repairing the dam, at that time, care was taken to run it still further into the rock beneath the road, and it was bolted to the solid part of the rock.   After the end of the dam was broken away or displaced, in 1858, it was raised higher, and carried further into the road.   According to the testimony, *the wall was necessary for the protection of the road,* and was made necessary by the erection of the dam in 1854.   As to the influence of the wall upon the course of the river, and upon the mill-dam, the testimony was conflicting.   Ellicott and Matthews, (who was a millwright employed by the plaintiff,) were of opinion that the wall, by obstructing the water on that side, turned it more towards the Howard county shore, and caused a greater pressure on the dam.   On the other hand, several witnesses thought that as the natural inclination of the stream was towards the Howard county bank, an open wall on the other side, which merely occupied the space of a small quantity of water, neither affected the course of the river, nor appreciably increased the volume of water thrown upon the dam ;   while it operated a positive benefit to the dam, by preventing the washing of the Baltimore county end.   It was proved that the native rock upon which the dam abutted — a part of the great hill which forms the northern limit of the valley — was three feet higher than the breast of the dam, so that it was impossible that there should be any escape at the side under any circumstances, until after the water had attained that depth in the dam. And this natural barrier, being higher than the greatest artificial elevation in the road, the water would be just as much obstructed, though no wall or filling was there.

Four exceptions were taken by the plaintiff at the trial below.

*First Exception:* The defendants offered to read in evidence the Act of 1831, ch. 27, entitled "An Act to provide for building a bridge over the Patapsco Falls, at or near the Thistle Factory;" and to prove that George Ellicott was one of the commissioners named in that Act, and acted as such commissioner in building the bridge mentioned in that Act, and that he saw the draft of the Act before it was passed, and approved of it.

The plaintiff objected to the reading of the Act to the jury, but the Court overruled the objection and allowed the same to be read. To this ruling the plaintiff excepted.

*Second Exception:* After the testimony on both sides, proving the use of the road in question by the public for over thirty years, and that it had been worked as a county road for over twenty years, the defendants offered in evidence the record of the proceedings in 1835-6, for the condemnation of said road. The plaintiff objected to the reading of the proceedings in evidence, "because the same were not in conformity with law, or because such proceedings, on their face, were inadmissible to show that said road was ever laid out as a public road." The Court overruled the objection, and allowed the said proceedings to be read in evidence; thereupon the plaintiff excepted.

*Third Exception:* The County Commissioners, after receiving a communication from George Ellicott, complaining of the wall, it seems, appointed a committee to examine and report to them on the subject. This committee, which consisted of John C. Holland, William Reddington and John R. Harvey, made a report to the County Commissioners, which was offered in evidence by the plaintiff. After all the other evidence was in, the plaintiff claimed to rely upon certain opinions expressed in that report by the committee to the effect, that but for said stone wall, the water when high could escape around the abutment of the dam, and also that said wall would injure or damage said dam or mill property. The Court refused to allow it to be read for such purposes, but did allow it to be

used before the jury for the purpose of showing that said stone wall was erected under the authority of the defendants. To such refusal of the Court, the plaintiff excepted.

*Fourth Exception:* The plaintiff then offered the three following prayers:

1. If the jury find from the evidence that the public road as laid out and used for more than twenty years past, passed over the lands of George Ellicott, on or near the water of the Patapsco river, and that as said road was laid out and used, it was subject to overflow at the point where the jury may find the dam of the plaintiff was erected as shown in the evidence, then it was not lawful for the defendants to cause any obstruction to be placed at said point, so as to prevent the natural overflow of said road at said point, as the same used to be overflowed before the erection of said dam, provided the jury find that the plaintiff holds said dam, under the written leases read in evidence, and that the same were executed by said Ellicott.

2. Even if the jury find from the evidence aforesaid, that the mill-dam as erected by the plaintiff or those under whom he claims, was so located as to cause an increased overflow in freshets, of that part of the public road described in the evidence, which is contiguous to the Baltimore county end of said mill-dam, then the defendants were not justifiable, because of said location of said mill-dam, in constructing the wall as stated in said evidence, provided that the jury find that said wall was constructed so as to endanger the water power of the plaintiff, as derived from said mill-dam, and provided the jury shall further find that said wall did cause the destruction of said mill-dam at the time, and in the manner stated in the evidence.

3. If the jury find from the evidence aforesaid, that the public road of the defendants as used for twenty years before the injury complained of, and as located under the proceedings read in evidence, was so located as to be liable to inundation in freshets, at the place in controversy. And if the

jury find that the defendants caused said road to be walled up, and changed in 1859, at said place, as the same had never been walled up or used previously, and if the jury further find that said road as walled up and changed, did prevent that natural overflow of said road, which had always previously existed in freshets, and that thereby the waters of the Patapsco river were obstructed in their natural escape and flow at that place in freshets, and the same were forced over the dam of the plaintiff with such increased force as to destroy the dam, as stated in the evidence, then the defendants cannot justify the destruction of said dam by the means aforesaid.

The defendants then offered the four following prayers:

1. That the plaintiff is not entitled to recover in this case, unless the jury shall be satisfied from the evidence, that the building of the wall mentioned in the declaration was the cause of the injury, for which the plaintiff claims damages in this case.

2. If the jury find that the plaintiff's mill-dam mentioned in his declaration, was first built in the year 1854, and that in the year 1859, the wall, the erection of which is complained of in the declaration, was built on a public county road, in the First Election District of Baltimore county, and that said road had been a public county road for more than twenty years before the erection of said dam, and that said wall was built under the superintendence and direction of Columbus E. Shipley, road supervisor of said district, for the purpose of repairing and improving said road, and in the manner and under regulations directed by the County Commissioners of Baltimore county, and that said wall was constructed with ordinary care, and was a benefit to said road, then the plaintiff is not entitled to recover in this action for any consequential injury occasioned to the plaintiff by the erection of said wall, even if the jury should find such injury to have been done him.

3. If the jury shall believe from the evidence that the wall mentioned in the declaration of the plaintiff, and in the testimony of the witnesses, was not built by the authority of the

Commissioners of Baltimore county, or that it was not built in the manner and under the regulations, directed by the said commissioners, then in either case the plaintiff is not entitled to recover.

4th. That if the jury find from the evidence, that in or about the year 1835, a public county road was condemned and opened in Baltimore county, on the bank of the Patapsco river, and has continued to be used as a public road ever since, and that the plaintiff's mill-dam mentioned in the declaration was first built in the year 1854, and that in the year 1859, the wall mentioned in the declaration was built on said road under the superintendence and direction of Columbus E. Shipley, and that said Shipley was then road supervisor of the First Election District of said county, that the place where the said wall was erected, was necessary for the preservation of said road in consequence of the building of said dam, and was constructed with ordinary care in the manner and under regulations directed by the County Commissioners of Baltimore county, and was useful and beneficial to said road, then the plaintiff is not entitled to recover in this action and under the pleadings, for any injury occasioned to the plaintiff by the erection of said wall, even if the jury should find such injury to have been done him.

The Court rejected all the prayers of the plaintiff as well as the second and third prayers of the defendants. The first prayer of the defendants was admitted by the plaintiff, and their fourth prayer was granted by the Court. To the rejection of the plaintiff's prayers and to the granting of the fourth prayer of the defendants, the plaintiff excepted, and the verdict and judgment being for the defendants, he appealed.

The cause was argued before BARTOL, C. J., STEWART, BRENT, and MILLER, J.

*Jos. L. Brent* and *Wm. Meade Addison,* for the appellant:
The plaintiff had the right to construct the new mill-dam in 1854. Ellicott owned both banks of the Patapsco, and the

free-hold of the land was in him, with all the rights apper-
taining thereto. *Angell on Water-Courses, sec.* 7; *Washburne
on Easements,* 212. The public could not get any interest in
this stream, or obstruct Ellicott in its free use, or take from
him its full enjoyment, except upon the condition of previ-
ously paying him for it. *Mahon vs. The New York Central
R. R. Co.,* 24 *New York Rep.,* 658; *Gardner vs. Village of
Newburgh* 2 *Johns. Ch. Cases,* 162; *Binney's Case,* 2 *Bland.,*
129. It is not pretended that the public ever obtained, either
by use or by the action of the Commissioners of Baltimore
county, any thing more than the right to a road over Elli-
cott's lands; and that if he ever received any compensation
therefor, directly or indirectly, it was only for the use of the
track of the road, and not for any portion of the water power.
Ellicott had the right to use the water without restriction,
provided he did not affect it in *its fall* when it *entered* or
when it left his land. *Washburne on Easements,* 244, *sec.* 1;
*Angell on Water-Courses, sec.* 95. He had the right, "insepa-
rably connected with and incident to it," to use the water to
work his mill, "without reference to any easement to which
proprietors of land below might be entitled." He had a right
"to the natural flow of the stream for any hydraulic purpose
to which he might think fit to apply it;" provided "the
works propelled did not exceed in character and magnitude
such as were adapted and appropriate to the size and capacity
of the stream, provided the use was reasonable." *City of
Springfield vs. Harris,* 4 *Allen,* 496; *Gould vs. Boston Duck
Co.,* 13 *Gray,* 442; *Toutlellot vs. Phelps,* 4 *Gray,* 376; *Wash-
burne on Easements,* 215, *sec.* 10, 216, *sec.* 11, 218, *sec.* 11,
220, *sec.* 13.

And the owner is not required to regard, in the reasonable
use of his water power, the peculiar necessities of an owner of
the mill below — growing out of the nature of his work —
although his mill had been established *for eighty years before*
the building of the upper mill. *Whaler vs. Ahl,* 29 *Penn.
Rep.,* 98; *Hoy vs. Sterrett,* 2 *Watts,* 327.

In estimating what is a reasonable use of water power by a mill owner, usage, and the state of mechanical and manufacturing advancement, are to be considered.  *Gould vs. Boston Duck Co.*, 13 *Gray*, 442; *Pitts et al. vs. Lancaster Mills*, 13 *Metcalf*, 156; *Barrett, et al. vs. Parsons*, 10 *Cush.*, 371; *Code Pub. Gen'l Laws, Art.* 90, secs. 18, 19, 20.

Even if the bed of the road had been legally condemned and paid for, this did not justify the county in depriving the plaintiff of the full head and flow of his water power until they condemned and paid also for it.  *Mahon vs. The New York Central R. R. Co.*, 24 *N. Y. Rep.*, 658.  The right of a riparian owner to the full enjoyment of his water power, is recognized by our Legislature.    *Code of Pub. Gen'l Laws, Art.* 90, secs. 18, 19, 20.

If the new mill-dam caused an increased overflow of the road in freshets, and the plaintiff had no right to erect the dam, still the defendants were not justifiable in constructing the said wall.  *Williams vs. Gale*, 3 *H. & J.*, 231.

If the plaintiff were wrong in erecting the new dam, it does not excuse the defendants' wrongful act in *demolishing his dam and endangering his mill* by a counter-erection.    *The Tonawanda R. R. Co. vs. Munger*, 5 *Denio*, 255; *Angell on Water-Courses*, sec. 390; *City of Georgetown vs. Alexandria Canal Co.*, 12 *Peters*, 97; *Washburne on Easements*, 583, sec. 2.

If a person entitled to raise water to a certain height by means of a dam, raises it higher than he is entitled to do, the person injured may reduce the dam to the proper height, but has not the right to demolish it.  *Heath vs. Williams*, 25 *Maine*, (12 *Shepley*,) 209; *Prescott vs. Williams, Adm'r*, 5 *Metcalf*, 435.  A fortiori, the commissioners, who are a tribunal of limited jurisdiction, cannot justify an illegal mode of abating a nuisance.   It is an absurdity in terms to say that a body deriving all its powers from law, may do an unlawful act.   Their jurisdiction being limited, must be administered in the manner and according to the terms of the law creating it.   They cannot alter, change nor close a road but upon

application of citizens of the county. The grade of the road at the time of the building of the wall, and as a part of the operation, was changed, as was also its width. This they had no right to do, without pursuing the course indicated by the laws. *Code of Pub. Gen'l Laws, Art.* 28, secs. 11–14; *Barrickman vs. Commissioners of Harford county*, 11 *G. & J.*, 50; *Williamson vs. Carnan*, 1 *G. & J.*, 184.

Several courses were open to the defendants, by which, without violation of law or the rights of the plaintiff, they could have protected the public from the effects of the new dam, if it had needed protection. They could have proceeded by having a petition filed at the instance of some persons who had occasion to travel that road frequently, to have it *altered* by increasing its width, walling it, and heightening it, and changing its grade. This would have given Ellicott an opportunity of objecting to it, or of demanding an allowance for damages for a different use of his land; and also for the probable injury to his mill-dam and mill, *or the loss of the use of the water-power;* they could have proceeded under the ancient remedy of an "assize of nuisance,"—a remedy still open to persons injured by a nuisance. *Angell on Water-Courses, sec.* 394; 3 *Black. Com.*, 220, 221; 9 *Reports*, (*Coke,*) 55.—By bill of injunction to restrain plaintiff from building the dam. *Attorney General vs. Utica Ins. Co.*, 2 *Johns. Ch. Rep.*, 382; *Angell on Water-Courses*, 565; *City of Georgetown vs. Alexandria Canal, &c.*, 12 *Peters*, 91, 98, 99;—By indictment. *Angell on Water-Courses*, 566-7; *Attorney General vs. N. J. R. R. Transportation Co.*, 2 *Green Ch. Rep.*, 136; *City of Georgtown vs. Alexandria Canal Co.*, 12 *Peters*, 97;—By action on the case. They could have run the road through the bed of the rocks, and the costs of this change would be the measure of damages the Baltimore County Commissioners could recover. *City of Georgetown vs. Alexandria Canal Co.*, 12 *Peters*, 97-8;—By calling on Ellicott to make a suitable road; and on his failure to do so, to make one at his cost. *Code of Pub. Gen'l Laws, Art.* 90, secs. 18, 19, 20.

We further maintain that if the road were opened and condemned as a public road in 1835, and continued as such ever since, and the dam was erected in 1854, and in the year 1859, the wall was built under the direction of the Supervisor of Roads, and that it was necessary for the preservation of the road, in consequence of the building of said dam, and was built under the directions of the Commissioners of Baltimore county, and was useful and beneficial to said road, still the plaintiff is entitled to recover.

The defendants' fourth prayer rests their justification speciously on the supposed necessity for preserving the road from the increased flow of water caused by the plaintiff's new dam. Conceding that "*se defendendo*" they might lawfully erect a bulwark against the wrongful overflow caused by the plaintiff's act, yet the Court should have refused the prayer because it misleads the jury into a verdict for the defendants, irrespective of any question of excess in the erection of the wall. Here is abundant evidence proving that the new wall was actually built on top of our dam, and the grade of the road elevated, and its width enlarged, thus causing as much of an excess in the means adopted as if the defendants, in an action for assault and battery, had exceeded the limits of the right of personal defence, and become in turn the assailant. 1 *Chit. Plead.*, 593, *side*; see cases in *notes e, a, f.*

*Arthur W. Machen* and *Thos. Donaldson,* for the appellees:

The evidence offered by the defendants, and to the admission of which by the Court, the first exception was taken, was properly received, being an admission by Ellicott, the plaintiff's lessor, of the existence of a public road at the place in question. 1 *Greenl. Evid., sec.* 189; *Robinet vs. Wilson,* 8 *Gill,* 179; *Slatterie vs. Pooley,* 6 *M. & W.,* 664; *Crease vs. Barrett,* 1 *Cr. Mees. & Rosc.,* 932; *Countess of Dartmouth vs. Roberts,* 16 *East,* 334. And, as the representation made to the Legislature induced the building of the bridge under the Act of 1831, ch. 27, and the expenditure of the money re-

quired to build it by the Commissioners of Baltimore county, the facts amount to an estoppel, and conclude Ellicott and those who claim under him from asserting, as against the County Commissioners, that the two roads thus connected by the bridge, were not in point of fact, public roads. *Kennett's Petition,* 4 *Frost.,* (*N. H.,*) 141, 142 ; *Lewis vs. Carstairs,* 6 *Whart.,* 193 and 5 *W. & Serg.,* 205 ; *Swartz vs. Swartz,* 4 *Barr,* (*Pa.,*) 358, 359 ; *Pickard vs. Sears,* 6 *Ad. & El.,* 469 ; *Phil., Wilm. and Balto. R. R. Co. vs. Howard,* 13 *How.,* 336 ; *Storrs vs. Barker,* 6 *Johns. Ch.* 166 ; *Doub vs. Barnes, et al.,* 4 *Gill,* 1 ; *Doub vs. Mason and Wife,* 2 *Md. Rep.,* 380.

The recitals in the Act of Assembly relating to a matter in which the public were interested, were also evidence *per se,* (though not conclusive,) that the road was a public road. Such a legislative declaration may be regarded as evidence in the nature of public reputation. 1 *Phill. Evid.,* (*Ed.* 1859,) 219 *and note* 87.

The proceedings respecting the road in 1835–36, even if irregular, were competent evidence as an assertion on behalf of the public, made more than twenty years before the Act complained of, that the road was a public road, in connection with the evidence of the continuous use of it ever since as a public road, both by the general public, and by the county authorities. *Hoye vs. Swan's Lessee,* 5 *Md. Rep.,* 248. The proceedings themselves, however, are sufficiently formal, and are liable to no good objection, followed as they have been by actual use of the intended road. *Kennett's Petition,* 4 *Frost. N. H.,* 139 ; *Small vs. Eason,* 11 *Ired. Law,* 94. At all events, there was no such defect in them as can be made a ground of objection collaterally, in this way. And inasmuch as it was not disputed that the road had been in fact used as a public road for more than twenty years, the introduction of the condemnation proceedings could not prejudice the plaintiff ; such continuous use being sufficient to entitle it to be regarded to all intents and purposes as a public road. *Day vs. Allender,* 22 *Md. Rep.,* 511.

The views expressed by the three persons appointed by the County Commissioners in their report to the commissioners, cannot, under any head of evidence, be proof of the correctness of the representations so advanced. Even if the opinions or statements in question could be evidence of the truth or soundness of them, their effect would be overcome by the equally distinct representation, in another part of the same report, that " the wall was necessary to protect the road from being overflowed at times," showing a perfect justification in law for the erection of the wall.

The road existed before the dam, and the erection of the dam made the wall necessary to save the road from the injurious consequences of it; upon these facts, nothing can be clearer, it is submitted, than that it was not only the right, but the imperative duty of the County Commissioners, to make the improvement. Therefore, the defendants' fourth prayer, which presents this proposition, was rightly granted, and the prayers of the plaintiff, which are all inconsistent with it, were rightly refused. *Angell on Water-Courses*, sec. 332. The plaintiff cannot take advantage of his own wrong.

A much broader proposition might be contended for. Even had the dam been ancient, nothing done to the public highway in the way of reasonable improvement, could afford ground for an action to recover consequential damages. The public authorities have the clear right to alter the grade of public highways, and there can be no action for damages which may result from the exercise of this right. *Ely vs. City of Rochester*, 26 *Barb.*, 133; *Benedict vs. Goit*, 3 *Barb.*, 459; *Radcliff's Ex'rs vs. Mayor, &c. of Brooklyn*, 4 *Comst.*, 195; *Goszler vs. The Corporation of Georgetown*, 6 *Wheat.*, 593; *Graves & White vs. Otis*, 2 *Hill, N. Y.*, 466; *Smith vs. Corporation of Washington*, 20 *Howard*, 135; *O'Conner vs. Pittsburgh*, 18 *Penn.*, 187.

BARTOL, C. J., delivered the opinion of this Court.

The first three bills of exceptions present questions of evidence, the fourth brings up for review the ruling of the Cir-

cuit Court upon the prayers. These will be considered in their regular order.

*First Exception.* The Act of 1831, ch. 27, authorizing the building of a bridge across the Patapsco, at Ilchester, which recognized the road in question as a public road, was admissible in evidence; when accompanied by proof showing that George Ellicott, under whom the plaintiff claimed title, was cognizant of the application to the Legislature for the passage of the law, knew and approved of its provisions and acted under it as one of the commissioners. This testimony was evidence of an admission by Ellicott that the road was a public road, and it also showed a recognition of that fact by the Legislature.

*Second Exception.* There is no valid objection to the admissibility in evidence of the record of proceedings in 1835, for the condemnation of the road. The jurisdiction of the County Commissioners plainly appears on the face of the proceedings. *Act of.* 1825, ch. 219, *and its supplements;* (2 *Dorsey's Laws,* 1709, &c.) The alleged irregularities in the action of the special commissioners, even if such existed, would not render the proceedings void, when collaterally called in question. These irregularities are supposed to consist in the omission of the commissioners " to value and ascertain the damages that may be sustained by each and every person through whose lands the road may pass," as provided by the sixth section. Such an objection might have been made by parties interested at any time before the final ratification of the return, as prescribed by the seventh section; but could not afterwards be made even by a party interested. Where no damages have been awarded, and the return has been finally ratified without objection, the presumption is that no damages were suffered or claimed by the proprietors. It is very clear upon principle and authority that after the final ratification, the proceedings cannot be collaterally impeached, either on the ground that no damages or insufficient damages have been valued and ascertained by the commissioners. The same ob-

servations may be made with regard to all the other supposed irregularities in the proceedings of the special commissioners, relied on by the appellant as fatal to their validity. It appears that these commissioners made their return on the 7th day of July, 1835, the record recites that afterwards, on the 6th day of October, 1835, on motion of the petitioners, leave was granted them to withdraw the return of the special commissioners for the purpose of amending the same, and afterwards, on the 3d day of November, 1835, the petitioners returned the report and plat of said special commissioners as the same had been by them amended, which was accordingly filed, &c. The objection has been urged that there was no authority to allow the return to be withdrawn and amended by the petitioners, and that such an irregularity renders the whole proceedings void. But it appears that the amended return was made and signed by the special commissioners, not by the petitioners, and in the face of this fact appearing on the record, the recital that it was amended and filed by the petitioners, must be treated and considered as a mere clerical error or misprision. It was within the discretion of the County Commissioners to allow the return to be amended by the special commissioners, and as the record shows that the amended return was their act, no valid objection can be made to their proceedings, after they have been finally ratified, because of the recital in the record, to which we have referred. Another objection has been urged that the description and dimensions of the road are not stated with precision in the commissioners' return; the courses and distances in length alone being given,—this is not strictly correct. The commission directs that the road shall be located of the width of thirty-two feet; the return states that the road as located is of that width, except in certain places designated, where it was not practicable to construct it of the whole width. This departure from the directions of the commission is cured by the order of ratification. For these reasons we think there

was no error in the decision of the Circuit Court in the second exception.

*Third Exception.* The opinions of the three persons appointed by the County Commissioners to examine the wall complained of, as to its probable effect upon the property of the appellant, was not admissible evidence for the purpose of proving the facts for which it was offered, and there was no error in its rejection. Those parties might have been called to the stand and examined as experts, but their opinions and views unsupported by oath were clearly inadmissible.

*Fourth Exception.* This exception was taken to the rejection of the three prayers of the plaintiff, and the granting of the fourth prayer of the defendants. The questions presented by these prayers may be more briefly disposed of by examining first the defendants' fourth prayer, the granting of which determined the case in favor of the defendants, and if it correctly state the law, it follows that there could be no error in rejecting the prayers of the plaintiff, which assert legal propositions contrary to and inconsistent with it. The plaintiff's cause of action was the alleged damage and injury suffered by him, in consequence of the increased flow of water upon his mill-dam, caused by the erection of a wall by the defendants upon the public road contiguous to and above the dam. The fourth prayer asserts the proposition that if the erection of the plaintiffs mill-dam in 1854, rendered it necessary that the wall complained of should be built, *in order to the preservation of the road* at that place, then the County Commissioners had the authority and right to cause the wall to be built, and if it were constructed with ordinary care, and was useful and beneficial to the road, they are not responsible to the plaintiff for any injury he may have suffered thereby. The law casts upon the defendants not only the right but the duty to protect the public roads from injury, and keep them in proper repair for the use of the public; individual rights must be held and enjoyed in subordination to those of the public.

If by reasonable or necessary improvements to a highway, a party suffers consequential damage, it is *damnum absque injuria,* and no right of action accrues to him.    This principle has been established by an unbroken current of decisions.    *Ely vs. City of Rochester,* 26 *Barb.,* 133 ; *Radcliff's Ex'rs vs. Mayor, &c. of Brooklyn,* 4 *Comst.,* 195 ; *Smith vs. Corporation of Washington,* 20 *How.,* 135.    In this case the defence of the appellees, as stated in their fourth prayer, is fortified by the fact that the act of the plaintiff in constructing his dam in 1854, whereby the waters were raised and the public road overflowed, rendered the erection of the wall necessary for the preservation of the road, so that the injury complained of appears to have been indirectly the consequence of the plaintiff's wrongful act ; in such case he would have no right to maintain an action even against private individuals.    For these reasons we think there was no error in granting the defendants' fourth prayer.    The first prayer of the plaintiff asserts the proposition that if the road, as it had been laid out and used, was subject to be overflowed at that place, it was not lawful for the defendants to cause any obstruction to be placed at that point, so as to prevent the natural overflow of the road, as it had been used to be overflowed, before the erection of the mill-dam by the plaintiff. This proposition is erroneous.    As we have said, the duty of the County Commissioners was to keep the highway in good order and condition for the use of the public.    And this duty required them to adopt the necessary means to prevent it from being overflowed by water.    They would not be justified in the neglect of this duty, merely because the natural flow of water had been allowed for any indifferent period to submerge the highway, to the inconvenience and detriment of the public.    The second prayer is equally objectionable, it assumes that the effect of the erection by the plaintiff of his mill-dam, caused an increased overflow of the road, and denies to the defendants the right to erect the wall, even if necessary for the protection of the road, if thereby the water power of

the plaintiff was endangered and was actually injured.. This is inconsistent with the principles we have before announced. The plaintiff could not lawfully claim the right to cause the public highway to be overflowed, nor deny to the defendants the use of the means necessary for its preservation. The third prayer is liable to the same objections as the first and second, and was also properly rejected.

(Decided 20th April, 1868 )