*State of Missouri, use of Adams and others vs. Campbell, Dudley, et al.*

STATE OF MISSOURI, use of Adams and others, vs. CAMPBELL, DUDLEY et al.

1. If a declaration contain but one count, in which several breaches are assigned, a general demurrer cannot be sustained if there be one good breach.

2. Suit may be brought on the bond of an administrator, in the name of the State by any person injured.

3. An heir or distributee may sue for a failure to account for money received, and their right of action accrues as soon as the failure occurs.

4. Where there is a primary, and an ancillary administration of an estate, if the tribunals having jurisdiction of the ancillary administration, can distribute or remit the assets, the courts having jurisdiction of the primary administration will not interfere within the limits of the ancillary administration.

## ERROR to Pike Circuit Court.

BUCKNER, *for Plaintiff in error, insists:*

That the Circuit Court erred in sustaining the demurrer to the declaration.

1. Because the declaration is substantially *good*; and if *technically* defective, could only be reached by a special demurrer.

2. The 4th, 5th and 6th breaches are well assigned. After a payment of debts by a foreign administrator, the balance in his hands, is subject to distribution according to the laws of the place of the intestate's residence, at the time of his death, and ought to be transmitted to the domestic administrator, for that purpose. Story's Con., § 513, 514, 518; Davis vs. Head, 3 Pick., 128.— Bland was administrator in both jurisdictions, and having a balance in his hands, after payment of debts due in Kentucky, it was his duty to bring this balance into the home administration, to be disposed of according to our laws; and for this neglect, he and his securities on his bond here are liable.

3. But if the breaches are not well assigned, (viz: 4, 5 and 6,) the 1st, 2nd and 3rd are good and sufficient; and the court erred in sustaining the demurrer to the whole declaration. State, use of Darland vs. Porter and other, 9 Mo. R., 356; Rev. Stat. 1835, sec. 16, art. 3; Practice at Law.

4. The suit is brought by the proper parties. Rev. Stat. p. 62.

*State of Missouri, use of Adams and others* vs. *Campbell, Dudley, et al.*

WELLS & PORTER, *for Defendant in error, insist:*

1. That the plaintiff's declaration is substantially defective in all its breaches, in this, that it does not state, either that Bland's administration in Missouri, on the estate of Adams, had ever been finally settled and distribution of the residuum, after payment of debts ordered, or that the three years from the grant of letters had elapsed and the debts of Adams been paid or discharged, and consequently, it does not appear, that the persons to whose use the suit is brought, are in a situation to be "injured" by the omissions or misfeasances of Bland in his administration. Vide sec. 8, of art. 7, Rev. Statutes; also sec. 3, art. 6, title Administration.

2. If the moneys charged to have been received by Bland, and not accounted for, are permitted to be recovered by the distributees of Adams' estate, instead of by an administrator *de bonis non,* the rights of Adams' creditors may be impaired thereby, for ought that appears in the declation; and they cite the case of The State to the use of Ingram vs. Rankin and others, 4 vol. Mo. Rep., p. 427; also Croslin, *et al.* vs. Baker, 8 vol. Mo. Rep.; the latter case to show that the legal right to personal assets, is in the administrator, where administration has been granted.

3. The 4th, 5th and 6th breaches, seeking to hold the defendants liable for the proceeds of property, received by Bland, by virtue of administration granted to him in Kentucky, are clearly defective in this, that the securities for the administration granted to Bland in Missouri, are not *primarily* liable for assets or funds of Adams' estate, received by virtue of an administration in Kentucky; and the said securities are *only* liable, after the court in Kentucky, having jurisdiction of the administration there, (administration having been settled or debts paid,) shall have ordered the said assets or funds, received in Kentucky, to be remitted to Missouri for distribution. In support of which position, they rely upon Story's Conflict of Laws, secs. 512, 513, 514, and 515, also secs. 517 and 518, second edition of same work. And it is not averred in said declaration, that any such order was made, or said funds so remitted.

4. The fact of Bland having been appointed to administer on the estate in Kentucky, as well as that in Missouri, does not make his Missouri securities any more liable than they would have been if some one else had administered on Adams' estate in Kentucky; and they cite Story's Conflict, secs. 520 and 521.

5. The 7th breach is *further* defective, in *not* specifying whether the sum of money therein charged to have been received by Bland, was received by him, by virtue of his administration in Kentucky, or his administration in Missouri.

SCOTT, J., *delivered the opinion of the Court.*

This was an action of debt on an administrator's bond, instituted at the instance of Nancy Adams, guardian of the infant children of Daniel Adams, and for her and their use. The defendants were the sureties of Thomas Bland, the administrator of D. Adams. There was but one count in the declaration, containing seven breaches of the condition of the bond. The first three breaches alleged in substance, that the administrator Bland had received several sums of money, for which he had failed to account. The remaining breaches allege substantially, that Bland the administrator in this State, took out letters of administration on the estate of Adams, in the State of Kentucky, and as such he had received large sums of money, for which he failed to account. One of these last counts states moreover, that the moneys received by the ad-

ministrator in Kentucky, are subjuct to distribution among the heirs of D. Adams, the intestate.

There was a general demurrer to the declaration, which was sustained, and the plaintiff sued out this writ of error.

There being but one count in the declaration, alleging several breaches of the condition of the bond, if any one of these breaches is sufficient, the demurrer must be overruled. The 18th section of the 3rd article of the act concerning practice at law, does not affect this case. By the common law, if a declaration contained several counts, one of which was good, and the others faulty, if a general demurrer was put in to the whole declaration, the demurrer must have been overruled; for the good count being sufficient to sustain the plaintiff's right to a recovery, it could not be said, that the declaration was insufficient in law. The section above referred to, was introduced to remedy this, by making it operate as though it was put in only to the bad counts, sustaining it as to those which were bad, and overruling it as to the good ones. Here then is but one count in the declaration, and numerous breaches of the condition of the bond assigned in it; now it is evident, that if there was one good breach assigned, that the plaintiff is entitled to recover, if it is sustained by proof. There being but one count in the declaration, the section above referred to, does not apply; that was only intended when there were two or more counts, some of which were bad. It has been formerly suggested by this Court, that in cases like the present, the proper practice was, on the trial to move to exclude all evidence under the faulty breaches. Williams vs. Madden, 9 Wend., 240.

There is no foundation for the assumption, that this suit should have been brought by an administrator *de bonis non*, of Daniel Adams. The suit could only have been brought as it was, in the name of the State of Missouri, the bond being made payable to her; and whether it could have been brought for the use of the heirs and distributees, would depend upon the nature of the breach of the condition, assigned in the declaration. The statute gives an action on the bond, "at the instance of any party injured, for any breach of its conditions." So the question is not in whose name the suit should be brought, but whether those for whom it is instituted, have shown that they are injured, by any of the breaches set forth in the declaration.

Certainly the interests of all those who are in any way concerned in the estate of deceased persons, require that such estate should be brought to a final settlement, with as little delay as possible. It is obvious, that heirs and distributees may be injured by the delay, neglect, or refusal of

administrators to account for moneys received. Whether the estate will be insolvent or not, is not generally ascertained until there is an account. A want of knowledge of the condition of their deceased parent's estate, may distract the views of his children, and prevent them from adopting that course of life, which its situation may ultimately require. Whether three years have elapsed from the date of the letters, is a matter of utter indifference. Lands may descend; there is a contingent right in the administrator to sell those lands. The existence of this right may seriously affect their sale by the heir. Suits on administration bonds, can only be brought against the securities, within seven years from the death of the principal. If administrators *de bonis non* and creditors fail to bring suit, must those rights which are postponed to theirs, be sacrificed by their neglect? These considerations are sufficient to show, that heirs and distributees may be injured by the failure of an administrator to account for moneys received by him. The law therefore notices, that heirs and distributees may be injured by the neglect of an administrator to account for money received. This injury accrues as soon as the neglect occured, whether it is within three years or not. The amount of the injury, is a question for the jury, to be determined by the facts in evidence before them. If the heirs and distributees should recover from an administrator, moneys or property, not accounted for, if creditors should afterwards appear, they could by bill in equity compel them to refund.

The breaches in relation to the administration in Kentucky, are insufficient. It has been held, that when there is a primary and ancillary administration, that a court of equity has jurisdiction to decree an account and distribution according to the *lex domicilii* of the estate of a deceased person, domiciliated abroad, which has been collected under that administration. But whether it will proceed to decree such account and distribution, or direct such assets to be remitted, to be distributed by a foreign tribunal, depends upon the circumstances of the case. Harvey vs. Richards, 1 Mason, 381. This principle has been incorporated into our Code, and is declaratory of what seems to have been the law on the subject. Sections 21-2-3-4-5 and 26 of the 6th art. of the act concerning administration. Story's Conflict, secs. 414, 414 and 415. If the tribunals within the jurisdiction of an ancillary administration, can distribute or remit the assets found there, as circumstances may require, it will follow, that the courts of the primary administration, cannot interfere with the assets, within the limits of the ancillary administration.

The other Judges concurring, the judgment will be reversed and the cause remanded.