### ROSELL M. HOUGH
### *v.*
### WILLIAM R. HOODLESS

1. MILITARY AUTHORITIES — *willful destruction of property by them.* Where a military officer causelessly and willfully orders and procures the soldiers under his command to destroy a building outside of military lines, he will be liable to the owner for the damage thereby occasioned.

2. And it seems, where ground upon which a building is standing, near a military camp, is necessarily required for the purpose of military parades, and the building is an obstruction to the proper use of the ground for such purpose, still the destruction of the building will be deemed causeless and willful, when it could be easily moved upon rollers.

APPEAL from the Circuit Court of Cook county; the Hon. E. S. WILLIAMS, Judge, presiding.

This was a suit originally brought before a justice of the peace in Cook county, by William R. Hoodless against Rosell M. Hough, to recover damages resulting from the destruction of a building in the possession of the plaintiff, and owned by him, by a body of soldiers acting under the orders of the defendant as their commanding officer.

The summons was in the statutory form, requiring the defendant to answer the complaint of the plaintiff, " for a failure to pay a certain sum not exceeding one hundred dollars."

The cause was removed into the Circuit Court by appeal, where it came on for trial before the court without the intervention of a jury.

The plaintiff having proved that he was the owner and in possession of the premises at the time the alleged injury was committed, and that they were outside of the military lines of Camp Douglas, proceeded to show the circumstances under which the house was destroyed, by the following testimony :

*Horace Warren* testified that he knew the property in question. The house was not completed, but was worth from $100 to $200, in the condition in which he saw it; that it was 500 or 600 feet west of the western boundary of Camp Douglas,

and outside of the line where martial law had been declared, and could have been moved easily on rollers. A diagram was then shown to the witness, and under objection on the part of the defendant, he was allowed to testify that it was a fair representation of the camp and its vicinity; that the property was all open except plaintiff's residence, and two acres between the same and Camp Douglas; that it was open prairie all around there; that regiments were accustomed to parade on ten acres south of and adjoining said house, though they sometimes went north.

On cross-examination, he testified that some of the troops were encamped outside Camp Douglas, before the erection of said building; that there was a line of sentinels around the camp in the street; that the camp did not extend any further than the board fence around the same, as he understood; that martial law was declared, and stakes were driven to show within what limits the same would prevail; that the line of stakes was 150 to 200 feet east of this building; that it was a cheap balloon frame building; that he had seen the troops in a number of instances pass in the vicinity of that ground when on dress parade, for about three months before the building was torn down; that he saw the building for three or four days, and perhaps a week; that he saw the plaintiff draw the lumber there; that the lot had been fenced before, but was vacant that season.

*William McCormick* was next called by the plaintiff, and testified that he knew said house which Hoodless was erecting; that the plaintiff was in possession of the property, and had been in possession of it seven or eight years; that it was a frame house 20x30; that he saw the house pulled down, which was done Sunday afternoon, the last Sunday in August or the first Sunday in September, 1862; the defendant, Col. Hough, was on the ground when the house was pulled down; and was the only colonel who was on the ground at the time; that there were 1,000 troops on the ground, he thought; that the building was torn down quickly, and carried off into the street; and that he thought the building could have been moved.

On cross-examination, he said that the ground had been vacant before the building was put up; that he had seen the troops out parading in the vicinity; that originally the ground on which the building was, had been inclosed with the premises in which the plaintiff lived, though there was property owned by other persons, situated between the plaintiff's house and the property in question, that is, the property from which said unfinished building was torn down.

*John M. Scanlan* was next called as a witness for the plaintiff, and testified that he was a captain in the regiment commanded by the defendant at the time said building was torn down; that he saw some soldiers tearing it down; that company "C," of the defendant's regiment, were around it when the witness got there, and that, by order of defendant, the company of the witness helped move a part of the materials into the street.

On cross-examination, he testified that the troops were out for parade, to the number of 5,000 to 7,000; that he thought the building was in the way, in the general line of march; but it might have been avoided; that the troops generally marched near the line of the building, that is, somewhere about the ground on which the building was put, but not often in the place where the building was, as they had better grounds south, and as there was open ground east and south of said place; also, that the brigade could have gone west of the house, and by marching further west, the house could have been avoided.

The plaintiff next read the deposition of *Hiram R. Enoch*, who testified that he was captain of company "C," 67th regiment Illinois volunteers, and provost marshal of Camp Douglas, in said months of August and September; that the defendant was colonel of said regiment; that at said parade said building was torn down by company "C," of said regiment; that said building was torn down by order of the defendant, who was present at the time, in command of the regiment; that the building stood near the northwest corner of the parade ground, which was the open space of ground lying west of Camp Douglas and east of the fair grounds.

On cross-examination, he said there were about 7,000 troops present at said parade; that Col. Joseph H. Tucker was in command of said troops, and present on that day, and was commanding officer at Camp Douglas; that the space of ground lying between the street, on the east side of the fair grounds, and west of a line running south from an inclosed tract of ground running west of Camp Douglas, was used as a parade ground, as the witness knew, from the 10th of the preceding June; and that on the day of said building being torn down, all the vacant ground between the lines last mentioned was needed for the parade; that he first saw the said building on the Sunday when it was so torn down; that the ground on which it was being erected had been previously used as a parade ground, but he did not know by whose authority; that he first knew of its so being used on the 10th of June, 1862; and that on said Sunday it was necessary to free said ground from obstructions, such as that building, to furnish room for the parade.

Also, that after the building was removed to what he considered a proper distance to be out of the way, it had to be removed a still further distance to make room for the parade.

The defendant then called said *Joseph H. Tucker* as a witness, who testified that there were about 9,000 troops in Camp Douglas and its immediate vicinity at the time said building was stated to have been torn down; also, that there were 8,000 to 9,000 rebel prisoners being guarded there; that he undoubtedly gave the order for the mustering; that he acted as reviewing officer, being then in command at Camp Douglas; that the ground where the building was put had been used for parade and instructions for said troops, and was the only ground, particularly in wet weather, which could be used for such purpose; that they had to use all the available ground around the camp for parading the troops, and that the ground used at the time in question, including that upon which said building was, was less than was absolutely required to parade or review the troops upon, and even then some of the troops had to be marched in the gutters and streets, and he, the wit-

ness, had directed that the troops should be mustered there; and it was his impression, though he stated it as a mere impression, that the building was entirely within the military lines; and that the lines of martial law were 100 feet outside the line of sentinels around the entire troops, including some that had to be camped outside of Camp Douglas; that he had directed the troops to be mustered on the ground they used; that they never mustered except on his order, and that he always issued an order for general parade on the last Sunday in each month, Sunday being, by army regulations, provided for instruction and parade of troops.

On cross-examination, he testified that he, as the commanding officer, had been authorized to establish lines of sentinels at such distance from the camp as the necessity might require.

On reëxamination, he said that he and the defendant had agreed as to where the lines of martial law around the camp should be, and that he, as the commanding officer, had left it to the defendant to have the stakes driven.

*Lewis B. Vastine,* a witness called by the defendant, testified that he was assistant quartermaster at Camp Douglas at the time aforesaid, and that the plaintiff had a bill made out against the government for the value of the building so torn down, which bill the quartermaster would have audited and allowed, but for a dispute which arose between him and the plaintiff about a keg of nails which the quartermaster said had not been used in the building, on which dispute arising, the plaintiff withdrew said bill, or it had afterwards been destroyed as not necessary to be kept by the quartermaster; he could not fix the amount of said bill.

On the foregoing testimony the court found for the plaintiff, and assessed his damages at $75, whereupon defendant moved for a new trial, which motion was overruled, and upon the entering of judgment upon said finding, the defendant brought the case to this court by appeal, alleging that the Circuit Court erred in finding for the plaintiff, and in overruling said motion for a new trial, and in rendering judgment for the plaintiff, and in the admission of testimony on the part of the plain-

tiff; and that the finding and judgment, respectively, should have been for the defendant, &c.

Messrs. ARRINGTON & DENT, for the appellant.

1.   The act of the appellant, alleged to have been a trespass, was "not a capricious exercise of arbitrary power; but it would seem to be but a reasonable act required by sound policy and a prudent regard to the faithful discharge of his duty as an officer." *Ogden* v. *Lund*, 11 Texas, 691.

Lord MANSFIELD likened a case of this kind to a prosecution of a civil magistrate for acts done in the exercise of the duty of such magistrate, in which case he said the principal inquiry to be made by a court of justice is, how the heart stood. See 1 T. R. *536 (302 top paging).

*Salus populi suprema lex*—" The good of the individual ought to yield to that of the community." Broom Leg. Max. 1 (25 Law Lib.)

There was an absolute necessity to have the ground for the purposes of the parade.

2.   The military force had been in possession of the lot before the plaintiff commenced building the house; and hence the defendant could not be sued in trespass for continuing the possession.

3.   The act of the defendant was recognized by the plaintiff as the act of the government, and as such ratified by the plaintiff, by his presenting his bill against the government.

Mr. WM. HOPKINS, for the appellee.

1.   The appellee had possession of the lot upon which the building stood, and the building was torn down and removed at the command or order of the appellant. The appellee may, therefore, maintain this action. *Davis* v. *Early*, 13 Ill. 198 ; *Barnstable* v. *Thatcher*, 3 Metc. 239 ; *Shrewsbury* v. *Smith*, 14 Pick. 297 ; *Kempton* v. *Cook*, 4 id. 305.

2.   The appellant, in directing the tearing down and removal of the building, incurred the same responsibility as a private

person. Sto. Ag., sec. 319 b.; *Nicholson* v. *Morensy*, 15 East, 384; *Bailey* v. *Mayor, &c.*, 3 Hill, 531.

The command of a superior to commit a trespass or other unlawful act is no justification to his inferiors. *Brown* v. *Howard*, 14 Johns. 119, 122.

The superior officer of the appellant is not responsible for his misfeasance. Sto. Ag., sec. 319 a.

The government is not responsible for the misfeasance of the appellant.

3. The appellant was not relieved from responsibility by the application of the appellee to the quartermaster for payment.

4. The destruction of the building was a wanton and unnecessary act, and, therefore, a trespass. *Beardslee* v. *French*, 7 Conn. 125.

5. The finding of the court below is correct and should be sustained, if, under the law and the evidence, the appellee is entitled to a judgment in any action of which a justice of the peace has jurisdiction. *Swingley* v. *Haynes*, 22 Ill. 214.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was an action brought before a justice of the peace of Cook county, and taken by appeal to the Circuit Court, where a verdict and judgment were had by the plaintiff against the defendant, who brings the case here by appeal.

The evidence shows conclusively that the plaintiff was in possession of this property at the time the trespass was committed. That he hauled the materials to the lot and erected the building. It is proved the premises were beyond the military lines marked out for Camp Douglas, and that the property was destroyed by order of the defendant. The evidence seems to make a case of causeless and willful destruction, as the building was light and could have been easily moved on rollers. No justification of any kind whatever is shown or attempted to be set up.

The judgment must be affirmed.

*Judgment affirmed.*