LEONARD JOHNSON, Respondent, v. JAMES J. BELDEN, Appellant.

(GENERAL TERM, SIXTH DISTRICT, JANUARY, 1870.)

A canal boat captain, in charge of the plaintiff's boat, having reason to think, and believing, that the gates of a lock were in bad repair and insecure, in the absence of the lock-tender, undertook to take the boat through the lock, as by custom in such case he was authorized to do. He had no notice from the defendant, whose duty it was to keep the lock in safe condition, that it was insecure; boats had been passed through the lock up to the time in question; and it was to be inferred from the evidence, that the captain believed he could pass the boat safely through; the gates gave way, and the boat was injured and delayed for repairs.— *Held*, that the plaintiff was entitled to recover damages on account thereof.

THIS action was brought to recover damages for an injury to the plaintiff's canal boat, at lock number nine, on the Chenango canal, on the 9th day of October, 1867; and for damages for the unloading and detention of the boat, and the detention of plaintiff's servants and team, in consequence of the injury to the boat. The boat was loaded with coal, and was going north. As the boat came near the lock, no lock-tender was there, and the captain of the boat went to the lock, and while preparing it for the reception of the boat the lock gates gave way, because one of them was old and out

of repair, and the rush of water carried the boat down into the lock, where it was struck and injured; and it was then and there unloaded, and got out and repaired. The defendant was the contractor, employed by the State to put and keep the canal at said lock, and said lock itself, in repair, and proper condition for the passage of boats. The action was tried before a referee, who found that the plaintiff was free from fault or negligence contributing to the injury to the lock or boat; and that one of the lock gates was out of repair; and that the lock gates gave way, and that the boat of the plaintiff was injured by reason of the negligence of the defendant, his agents or servants. He assessed the plaintiffs damages at $699.69, for which sum judgment was entered and docketed in favor of the plaintiff, with costs, in the office of the clerk of Broome county, on the 9th day of July, 1869. The defendant appealed from the judgment to the General Term of this court.

*William Barrett*, for the plaintiff.

*Charles Mason*, for the defendant.

Present—BALCOM, BOARDMAN, PARKER and MURRAY, JJ.

By the Court—BALCOM, P. J. The main point made by the defendant's counsel is, that the plaintiff, by his agent, the captain of the canal boat, contributed to the accident by which the boat was injured and the damage caused, for which the plaintiff recovered. That the captain knew the condition of the lock, and attempted to take the boat through it, knowing that one of the lock gates was so much out of repair that it might give way and injure the boat.

The plaintiff was not with his boat at the time it was injured. The captain of the boat testified that he stopped the boat a short distance above the lock, and then went to the lock, leaving the steersman and the driver of the towing team with the boat. That no lock-tender was at the lock, to prepare it for the boat, when he arrived there. That he had

previously noticed the lock; had looked at it no great deal; knew it was pretty bad, but did not know how bad it was.

The lock was nearly full of water. The captain opened the paddle gates in the upper lock gates, and was endeavoring to open the upper lock gates when the lower lock gates gave way. The water then rushed down the canal into the lock and swung the upper lock gates together, and they gave way.

The strong current of water in the canal, above the lock, caused by the lock gates going out, brought the boat down at great speed into the lock, where it was broken and damaged. The steersman and driver of the team were unable to hold the boat above the lock, or prevent it from going into the lock and there sticking fast and breaking.

The captain testified that when he made a previous trip with the boat and passed it through this lock, he supposed the lock was in a dangerous condition. That the gates were then so badly out of repair, that he did not know but that they might go out. That they were racked to pieces, so he thought they might go out; and that the gates were not right, they were racked so to pieces. That he had expected they would go out when the upper gates were open, and the full "heft" of water on the lower gates, if they went out at all, and that was why he had considered them dangerous. He also testified that he did not lay back because he expected any trouble with the lock. That the lock-tender lived a mile from the lock, and that he opened the gate because no one else was there to open it.

The evidence showed that about six boats per day had been locked through this lock each way during the season the accident in question occurred, and down to the time the plaintiff's boat was injured.

The lock-tender, and other servants or agents of the defendant, knew that the gates to this lock were not in good repair; but the lock-tender passed boats through the lock every day down to the time of the accident in question, and neither he, nor any other person having any care or superintendence of

the lock under the defendant, regarded it very hazardous to use it as it was. They had risked the passing of boats through it every day. But it was their duty to examine it, and put it in proper repair, and make it safe and secure for the passage of boats, or give notice that it was unsafe. And the evidence clearly shows they were guilty of culpable negligence in omitting to do so.

It cannot be said that the captain of the boat was guilty of any negligence in attempting to open the lock gates or pass the boat through the lock because of the absence of the lock-tender, or from the way or manner he did any act at the lock. Nor was there any negligence on the part of the steersman of the boat, or driver of the team that towed the boat. The boat was stopped at a proper distance above the lock, and the steersman and driver did all they could to prevent the boat running into the lock after the lock gates went out. And I am of the opinion the evidence of custom touching the opening of the lock-gates in the absence of the lock-tender, showed that the captain of the boat had the right to attempt to lock the boat through the lock in the absence of the lock-tender. There was only one lock-tender employed by the defendant to attend six locks, and the distance between the extreme ones of the six was one mile and a quarter. The lock-tender was at his house, about one mile from the lock at the time the boat came to it. And he testified, when he was not at the lock boatmen locked their own boats through it.

The facts show that there was no fault on the part of the captain of the boat, or his steersman or driver, unless the captain was chargeable with contributory negligence by reason of his knowledge of the condition of the lock or lock gates, and should be deemed culpable for attempting to pass the boat through the lock in the condition the lock-gates were.

It is probable that the captain had some doubt as to the sufficiency of the lock-gates. But I think the just inference from the evidence is, that he believed he could pass the boat safely through the lock when he attempted to do so. The

lock and gates had been trusted by the agents and servants of the defendant, and no notice had been given or was put up to warn him that the lock was unsafe, as there should have been if it was so much out of repair that boats could not be safely taken through it. It was not the duty of the captain to make a careful examination of the lock or the lock-gates, or to test the strength or sufficiency of either, before proceeding to prepare the lock for the passage of the boat.

If the captain suspected or feared the lock was not perfectly sound or entirely safe, it did not make him guilty of such imprudence as to relieve the defendant from liability for his culpable negligence by and through his agents and servants. The captain, notwithstanding his previous knowledge of the lock, had the right to presume that the lock-tender had full knowledge of the condition of the lock and lock gates, and that the same were deemed safe and secure for the passage of boats by the lock-tender, and by the defendant and his other employes, or that a notice would have been put up warning boatmen that it was dangerous to pass boats through the lock.

Johnson, J., in delivering the opinion of the court, in *Newson* v. *The N. Y. Cen. R. R. Co.* (29 N. Y. Reps., 390), said : " The law will never hold it imprudent in any one to act upon the presumption that another in his conduct will act in accordance with the rights and duties of both, even though such other has once conducted himself in a contrary manner." (See *Ernst* v. *Hudson River R. R. Co.*, 35 N. Y. Reps., 9 and 28.) It is laid down by Shearman & Redfield, in their work on Negligence, at page 28 : " If the defendant has, by his own act, thrown the plaintiff off his guard, and given him good reason to believe that vigilance was not needed, the lack of such vigilance on the part of the plaintiff is no bar to his claim." (See *Penn. R. R. Co.* v. *Ogier*, 35 Penn. St. Reps., 60.) On pages 30 and 31, in the same work, it is asserted : " As there is a natural presumption that every one will act with due care, it cannot be imputed to the plaintiff as negligence that he did not anticipate culpable negligence

on the part of the defendant. Nor even where the plaintiff sees that the defendant has been negligent, is he bound to anticipate all the perils to which he may *possibly* be exposed by such negligence, or even to refrain absolutely from pursuing his usual course on account of risks to which he is *probably* exposed by the defendant's fault. Some risks are taken by the most prudent men; and the plaintiff is not debarred from recovery for his injury if he has adopted the course which most prudent men would take under similar circumstances."

The foregoing rule is sustained by the case of *Clayards* v. *Dethick* (12 Queen's Bench Reps., 439), where it was held that: "The defendant is not necessarily excused merely because the plaintiff knew that some danger existed through the defendant's neglect, and voluntarily incurred such danger. The amount of danger, and the circumstances which led the plaintiff to incur it, are for the consideration of the jury. Therefore, where the plaintiff, in full view of obstructions left in the road by the negligence of the defendants, attempted to lead his horse over them, and the horse fell and was killed, it was held to be a question for the jury whether the plaintiff was culpably negligent or not."

In *Randall* v. *The Proprietors of the Cheshire Turnpike* (6 New Hampshire Reps., 147), the defendants' toll bridge became unsafe from the gradual decay of the timbers; but there was no open and visible danger in passing, and it was held that the defendants were responsible for the sufficiency of the bridge so long as they continued to take toll and keep the bridge open to the public, although notice was given to those who passed that there was danger. The plaintiff in that case, with his horses and wagon, fell through the bridge while passing it, and were injured, and the court held that it was not enough that the defendants gave notice that there was danger. But in order to have exonerated themselves, they should have given notice that there was danger *for which they would not be answerable*, and must have refused to take toll.

These authorities show that the knowledge the captain

of the boat had of the lock and lock-gates, and that he considered them dangerous, did not establish, as matter of law, that the plaintiff was chargeable with contributory negligence and debarred from recovering his damages. And I am of the opinion that the risks that the captain took, in attempting to pass the boat through the lock, were such as most prudent men would have taken under the circumstances.

My conclusion is, that the finding of the referee was correct, that the plaintiff was not chargeable with negligence that contributed to the injury to the boat; in other words, that the captain was free from fault, and that such finding is conclusive upon the defendant.

It is unnecessary to notice any other question in the case, for I understood the defendants' counsel to rely entirely, for a new trial, upon the point that the captain of the boat was guilty of such imprudence or contributory negligence as to be a bar to the action.

If these views are correct, the judgment in the action should be affirmed with costs.

So decided.