Moses Lampert, Respondent, *v.* Laclede Gas-Light
Company, Appellant.

**November 20, 1883.**

1. Damages — Negligence — Public Contractor. — A contract with a
municipality for the repairing of street lamp posts and lighting the
lamps raises a public duty on the part of the contractor to be performed
for the benefit of the citizens of the municipality distributively.

2. —— Pleading. — A recovery may be had by one who has been injured by
reason of the negligent non-performance of such duty, in an action
which proceeds as for a non-performance of public duty and which sets
up the contract by way of inducement.

3. Notice — Master and Servant. — Notice to a servant of a corporation
which will affect the corporation must be shown to relate to something
within the scope of the servant's duty.

4. —— Fifteen minutes from the time at which a lamp-lighter completed the
lighting of the lamps, held not to be a reasonable time within which to
give notice to the corporation of the fall of a lamp post, under the cir-
cumstances of the case.

5. —— Practice — The rule that an appellate court will not review ques-
tions determined on a former appeal, does not apply when questions
presented on the former appeal were not considered.

Appeal from the St. Louis Circuit Court, Adams, J.
*Reversed and remanded.*

C. & C. E. Gibson, for the appellant: A mere subor-
dinate employe can not bind the corporation which employs
him, in all respects and at all times, by knowledge which
he may acquire. — *Maupin* v. *Mining Co.*, reported in
*addendum* to Cent. L. J., of July 20, 1883; Wharton
on Agency, sects. 178–673; Story on Agency, sect. 140;
Ang. & Ames on Corp., sect. 308. A plaintiff can not avail
himself of the provisions of a contract unless he is individ-
ually a party to the contract. — *Necker* v. *Harvey*, Cent.
L. J., Feb. 9th, 1883; *Davis* v. *Clinton Water-works*,
54 Iowa, 59; *Atkinson* v. *Newcastle Water-works*, 2 Ex-
cheq. Div. 441; *Nickerson* v. *Hydraulic Co.*, 46 Conn.
24; Wharton on Neg., sects. 439, 440, 441; *Bissell* v.
*Roden*, 34 Mo. 63; Sher. & Redf. on Neg., p. 68, sect. 54;
*Winterbottom* v. *Wright*, 10 Mees. & W. 109; *Langmeid*

v. *Halliday*, 6 Exch. 761 ; *Heanen* v. *Pender*, L. R. 9 Q.
B. Div. 302; *Losee* v. *Clute*, 51 N. Y. 474.   The duty of
keeping the streets clear and free from such obstructions
was an obligation undoubtedly imposed upon the city ( *Welsh*
v. *City*, 73 Mo. 74) ; but no such duty ever attached by law
to the defendant or any individual citizen, in case of ob-
structions accidentally thrown in the street. — *Kirby* v.
*Market Association*, 14 Gray, 249 ; *Jamison* v. *Atchison*,
16 Kan. 358; *Eustis* v. *Johns*, 38 Cal. 3 ; *Heeney* v.
*Sprague*, 11 R. I. 456 ; *Vandyke* v. *Cincinnati*, 1 Disney,
532 ; *Flynn* v. *Canton Co.*, 40 Md. 312.

W. H. CLOPTON, for the respondent : The question of
the sufficiency of the petition herein is *res adjudicata*.
Defendant contended below that the city could not shift
its liability to keep the streets, etc., in repair.   We con-
cede that it could not, so as to escape liability, but we
contend that defendant *quoad hoc* was a joint tort-feaser. —
*Buesching* v. *St. Louis Gas Co.*, 73 Mo. 219 ; *Blake* v.
*City*, 40 Mo. 571.   Joint tort-feasors. — 2 Thomp. on Neg.,
891, 892 ; *Id.* 789, and cases cited ; Wharton on Neg.,
sect. 395 ; *Klauder* v. *McGrath*, 35 Pa. St. 128 ; Sher. &
Redf. on Neg., sect. 56 ; *Irwin* v. *Fowler*, 5 Robt. 482.
The defendant is liable for non-feasance as well as for mis-
feasance.   Sherman & Redfield on Negligence ( sect. 353),
use this language : " One who legally contracts with the pub-
lic authorities to keep in repair a highway, canal, or other
public work is liable to any one who is specially injured
by his omission to perform his contract, or his negligent
performance thereof." — *Robenson* v. *Chamberlain*, 34
N. Y. 389 ; *Fulton F. Ins. Co.* v. *Baldwin*, 37 N. Y. 648.

THOMPSON, J., delivered the opinion of the court.

This cause was before this court at a former term.   12
Mo. App. 576.   The plaintiff had recovered a judgment
against the defendant, and we reversed the same, on the
ground that the case had been put to the jury upon errone-

ous instructions. It has again been tried, and the plaintiff has again recovered a judgment.

We are now asked by the learned counsel for the appellant to consider the question of the sufficiency of the petition, a question which was not considered by this court on the former appeal. On the other hand, it is urged that what was considered and decided on the former appeal necessarily involved an adjudication of the sufficiency of the petition in favor of the respondent. We do not gather from the briefs which were filed at the hearing of the former appeal that our judgment upon this question was distinctly asked by either party. If it had been asked, and had not been given, for reasons which were satisfactory to us then, we should not now be precluded from considering it by any rule of procedure with which we are acquainted. A court will not, on a second appeal, as a general rule, allow a question to be reopened and discussed which was decided at the former appeal. *Lesinsky v. Dispatch*, 13 Mo. App. 576; *Metropolitan Bank v. Taylor*, 62 Mo. 338. But this principle has no application to questions which, though presented, were not considered on the former appeal. Such an application of the rule would be unjust. It would conclude, against the rights of a party who had invoked the decision of the court upon a meritorious question, the question itself, without the court ever having really examined or decided it. *State ex rel. v. Garroutte*, 67 Mo. 445. We, therefore, conceive it to be our duty to consider whether a cause of action is stated by the petition.

The petition reads as follows: " Plaintiff, for amended petition, filed by leave of court, states that, at the times hereinafter mentioned, the defendant was a corporation, incorporated under the laws of the state of Missouri; that at said times the city of St. Louis had, by its charter, power to light the streets in said city and keep the same and the sidewalks in repair, and it was the duty of said city to keep said streets and sidewalks in a safe condition for persons

passing along them; that the said city had at said times power to contract with persons or corporations for lighting the streets in said city; that on and before the 10th day of September, 1880, Eighth Street and Wash Street were public streets in said city; that on the 28th day of February, 1873, the defendant, the Laclede Gas-Light Company, entered into a contract with said city of St. Louis, whereby said Gas-Light Company agreed with said city to keep in good repair and supply all the public lamps, lamp posts, and burners then erected or thereafter to be erected in that part of the city of St. Louis lying north of Washington Avenue, and that said Gas-Light Company would light said lamps one-half hour after sunset of every day except when the clear moon light rendered it unnecessary.

" That, prior to said 10th day of September, 1880, there was a public lamp post and lamp on the southwest corner of said Eighth and Wash Streets, which is north of said Washington Avenue; that, on the afternoon of that day, said lamp post and lamp fell across and on the pavement or sidewalk of said corner of Wash Street and Eighth Street, and was carelessly and negligently allowed by defendants to remain on and across said sidewalk and pavement until and during the night of said 10th of September, 1880; that said lamp post and lamp obstructed the way on said sidewalk, and that no lamp was lighted by defendant, although there was no moon light, nor was any guard or warning placed on or near said obstruction, although said defendant had notice that said lamp post and lamp had fallen across and were lying on said sidewalk.

" Plaintiff says that on the night of September 10, 1880, it being then and there very dark, he was walking along said pavement at said corner of Wash and Eighth Streets, and, without fault or negligence on his part, but by reason of the said fault, negligence, and carelessness of defendant as aforesaid, plaintiff stumbled over said lamp post and fell,

and did then and there greatly lacerate, hurt, and wound one of his legs ; and thereby plaintiff became and was sick, sore, is now, and will permanently remain, sore and lame.

"That he has been since said date, and always will be, prevented by said injury from performing and transacting his usual work and business ; that he has been put to great expense in and about attempting to be cured of said injury, to-wit : the sum of $100, and he has by reason of the premises been otherwise damaged in the sum of $5,000, for which sums, and for his costs, he asks judgment."

It will be perceived that this petition in effect declares against the defendant upon a contract which the defendant had made with the city for keeping certain public lamp posts in repair, and asks for damages which the plaintiff is alleged to have sustained through a negligent breach on the defendant's part of this contract. And the question is, whether this contract raised such a duty on the part of this defendant toward the public generally that an action would lie against it by any person who might be injured through its non-feasance in failing to comply with the same. Fifty years ago such a question would not have admitted of much debate in a court of common law. The general rule of that law was that actions upon contracts can only be maintained by the parties to the contract or by their representatives. This question underwent consideration before that very learned and able lawyer, Mr. Baron Parke, in the case of *Langridge* v. *Levy* (2 Mees. & Wels. 519 ; affirmed in Exch. Cham., 4 Mees. & Wels. 337). There, a father purchased a gun to be used by himself *and his sons*, which the vendor warranted to be good and safe. While in use by one of his sons, it burst, in consequence of being defectively constructed, and the son was thereby injured. It was held that the son was entitled to maintain an action against the vendor of the gun. But Baron Parke, in giving his judgment in the court of exchequer, distinctly denied the principle for which the plaintiff's counsel contend, namely, that

wherever a duty is imposed on a person, by contract or otherwise, and that duty is violated, *any one* who is injured by the violation of it may have a remedy against the wrong-doer. He declined to lay down a principle which would lead to such an indefinite extent of liability; but he said: " We decide that he is responsible in this case for the consequences of his fraud, whilst the instrument was in the possession of a person to whom his representation was, either directly or indirectly, communicated, and for whose use he knew it was purchased." In a later case in the court of exchequer, it was well said by Mr. Baron Cleasby that, in a case presenting appropriate facts, the word " negligence " might be substituted for " fraud." Accordingly, where a person purchased of a chemist a bottle of hair-wash to be used by his wife in dressing her hair, and his wife used it and thereby received injuries in consequence of its deleterious character, it was held that she was entitled to recover damages of the chemist. *George* v. *Skivington*, L. R. 5 Exch. 1. These cases, it will be perceived, proceed upon an idea somewhat analogous to the idea of privity of contract. The person injured who was held entitled to maintain an action, was the person *for whose use* the defendant had knowingly sold the goods to a person not a party to the suit. This being so, the right of action of the beneficiary in the contract of sale was held to be the same as that of the vendee would have been if he had sustained the like injury.

The idea that there must ordinarily in these cases be a privity of contract in order to support the action is illustrated by another decision of the court of exchequer in 1842, in which all the four judges were very clear as to the result reached. The facts were that A had contracted with the postmaster-general to provide a mail coach for the purpose of conveying mail bags along a certain route; that B and others had agreed to horse the coach along the same route, and had hired C to drive the same; that while C was driving the same it broke down from latent defects in its construction, and C was injured. It was held that

C could not recover damages of A, because there was no privity of contract between them. *Winterbottom* v. *Wright*, 10 Mees. & Wels. 109. This decision has been much cited by American courts, and always, so far as I know, with approval. The same result, upon analogous facts, was reached in *Cook* v. *Dry Dock Co.* (1 Hilt. 436. See, also, *Davidson* v. *Nichols*, 11 Allen, 514.)

Whether we ought to be restricted to the same rule is rendered doubtful, when we consider the fact that our courts proceed upon much broader views in allowing third persons, for whose benefit contracts have been made, to maintain actions upon the same. Our code (Rev. Stats., sect. 3462), has so far changed the rule of the common law as to allow the beneficiary in a contract to bring an action at law in his own name to enforce the same; and our courts have gone so far in extending this beneficial provision, as to hold that it is not always necessary that the party suing should have been named as a beneficiary in the contract sued on, or that he should have been in the contemplation of the contracting parties at the time when the contract was made. It is sufficient that he has succeeded in some way to the rights of the obligee in the contract, so that the right of demanding its performance, in whole or in part, has accrued to him. This may be illustrated by a line of decisions in this court, which hold that the drawee of a check upon a bank may maintain an action against the bank upon its refusal to pay the same, if the circumstances were such that the drawer might have maintained the action. *McGrade* v. *German Savings Inst.*, 4 Mo. App. 330; *Zellee* v. *German Savings Inst.*, 4 Mo. App. 401; *Senter* v. *Continental Bank*, 7 Mo. App. 532; *State Savings Association* v. *Boatmen's Saving Bank*, 11 Mo. App. 292.[1] Another line of decisions in our courts well illustrates the same rule. The sheriff, in this state, gives a bond to the state, conditioned for the faithful discharge of his duties.

[1] These decisions have since been overruled by the supreme court. — REP.

Rev. Stats., sect. 3881. Actions on such bonds are brought in the name of the state to the use of any party injured by the breach of the same. *The State to use* v. *Davis*, 35 Mo. 406. A similar rule obtains with reference to the bonds of administrators, although here the action is given by statute to the person injured by the breach of the bond, proceeding in the name of the state. *The State to use* v. *Campbell*, 10 Mo. 724. But these and other like decisions seem to proceed upon the idea that the party suing has been brought into a relation of privity under the contract with the party sued, either by being expressly named in the contract as his beneficiary thereunder, or by an assignment of the rights of the obligee thereunder, which may take place either by the act of such obligee himself, or, in case of his death or bankruptcy or otherwise, by operation of law.

But these cases do not afford us substantial aid in determining the case under consideration ; because there is nothing in this case which can be called a privity of contract between the plaintiff and the defendant, either under the English rule or under the rule which obtains in this state. The plaintiff is not named as the beneficiary in the contract described in the petition, nor does he belong to the class of persons who are named as beneficiaries in this contract, nor is he the assignee in whole or in part of the rights of the city of St. Louis thereunder, either by an act of the city of St. Louis, or by operation of law. He stands as an entire stranger to the contract. This is seen by his learned counsel, who argues that the action is not a suit upon the contract, but an action *ex delicto*. If this position is well founded, it rests upon another idea which we shall now proceed to consider.

That idea is this : That the rule which requires privity of contract in order to support an action does not always apply where the duty which is undertaken by the contract is a *public duty*, to be performed by the obligor in the contract for the benefit of the public generally, or for the ben-

efit of particular members of the public distributively. This distinction, was clearly recognized in the case of *Winterbottom* v. *Wright* (10 Mees. & Wels. 109) where the boundary line excluding this class of actions was said to be this : That where there is no privity of contract between the plaintiff and defendant, and no public duty has been broken by the latter, the plaintiff can not recover. On the other hand, it does not follow that because a public duty has been broken, any person who is thereby damaged may have a right of action against the party who had undertaken the duty. There is, it is to be regretted, a great want of harmony in the adjudications upon this question. It may facilitate our examination of it to get one branch of it out of the way, by saying that where the act complained of is an act of *misfeasance*, as distinguished from an act of non-feasance, the party guilty of the act, although engaged in the performance of a public duty at the time when he committed it, is unquestionably liable to the party injured. Thus, an overseer of a highway may not be, and in many jurisdictions is not, liable to a traveller for an injury which may happen to him through a neglect of said overseer to keep the highway in repair. *Bartlett* v. *Crozier*, 17 Johns. 438 (reversing *s. c.*, 15 Johns. 220) ; *Garlinghouse* v. *Jacobs*, 29 N. Y. 297 ; *Young* v. *Commissioners*, 2 Nott & M. 538 ; *Nobles* v. *Langley*, 66 N. C. 287 ; *Tyson* v. *Commissioners*, 28 Md. 510 ; *Walter* v. *Commissioners*, 35 Md. 385 ; *Ball* v. *Winchester*, 32 N. H. 435. But where such a public ministerial officer, in prosecuting a work which the law governing his office requires him to do, inflicts an unnecessary injury upon another, either through negligence or malice, he can not justify the act as an act done within the scope of his jurisdiction or authority ; nor is it deemed an act of mere omission or non-feasance, to be redressed by a public prosecution, but an act of personal misfeasance, for which he must pay the resulting damages. *Shepherd* v. *Lincoln*, 17 Wend. 250 ; *Leader* v.

*Moxon*, 3 Wils. 461; *s. c.*, 2 W. Bl. 924; *Tearney* v. *Smith*, 86 Ill. 391; *Elder* v. *Bemis*, 2 Metc. 599; *Roberts* v. *Read*, 16 East, 215. Nor is his liability diminished, except perhaps in respect of exemplary damages, by the fact that in doing the act he proceeded in an honest endeavor properly to discharge the duties of his office, provided the act was one which is essentially unlawful and invasive of private right, and from which damage has ensued to another. *McCord* v. *High*, 24 Iowa, 336; *Tearney* v. *Smith*, 86 Ill. 391; *Conwell* v. *Emric*, 4 Ind. 209; *Hicks* v. *Dorn*, 44 N. Y. 47; *Elder* v. *Adams*, 2 Metc. 599; *St. Peter* v. *Denison*, 58 N. Y. 416. Nor does it make any difference upon principle that the public body which he represents (as in a case where it is a municipal corporation), is also liable. *Harriman* v. *Stowe*, 57 Mo. 93, 99; *Wright* v. *Wilcox*, 19 Wend. 343; *Lane* v. *Cotton*, 12 Modern, 472; *s. c.*, 1 Ld. Raym. 646, 655; *Cary* v. *Webster*, 1 Stra. 480; *Montford* v. *Hughes*, 3 E. D. Smith, 591; *Suydam* v. *Moore*, 8 Barb. 358; *Phelps* v. *Wait*, 30 N. Y. 78. See *Whittamore* v. *Waterhouse*, 4 Car. & P. 383.

But where the injury complained of results from a nonfeasance, that is, a failure to perform a public duty assumed by contract, where he is a public contractor, or a public duty, imposed upon him by the law governing his office and assumed by his acceptance of the office, where he is a public officer, the authorities are conflicting. If the rule which obtains in the case of the liability of private agents could always be applied here, there would not be so much difficulty. "The agent," says Mr. Justice Story, "is personally liable to third persons for his own misfeasances and positive wrongs; but he is not, in general (for there are exceptions), liable to third persons for his own non-feasances or omissions of duty in the course of his employment. His liability in these latter cases is solely to his principal, there being no privity between him and such third persons;

but the privity exists only between him and his princi-
pal." Story on Agency, sect. 308. This rule, it must be
allowed, still holds good in a large measure in respect of
the liability of public contractors and public officers for
mere non-feasance or omissions of duty, so that it may per-
haps still be said that for these things the duty violated is
a duty which the officer owes to the state or to the municipal
corporation whose officer he is, and that he is answerable,
only to the public for a non-performance of the same, by
indictment, information (*Rex* v. *Antrobus*, 2 Ad. & El.
794), impeachment, or ortherwise, as provided by law.
The policy of strictly holding such contractors or officers
to the performance of their public duties has frequently
resulted in the enactment of statutes giving actions *qui tam*
to private informers (as in *McFadden* v. *Kingsbury*, 11
Wend. 667); but here the plaintiff does not proceed upon
an injury to him through the non-performance of the duty;
he rests his right of action simply upon the statute.

The books afford frequent illustrations of this doctrine.
A policeman goes to sleep upon his beat, and, in conse-
quence of this failure of duty, a burglary is committed.
The person whose house is broken into can not maintain an
action against the policeman, but the municipal corporation
can punish the latter for his neglect of duty. *Green* v.
*Kennedy*, 46 Barb. 16. A surveyor of a highway neglects
to keep the same in repair, and a traveller is injured. The
traveller has no right of action against him. *Young* v.
*Davis*, 7 Hurl. & N. 760 (*s. c.* affirmed in Exch. Cham. 2
Hurl. & Colt. 197); *Bartlett* v. *Crozier*, 17 Johns. 438 (re-
versing *s. c.*, 15 Johns. 220); *Garlinghouse* v. *Jacobs*, 29
N. Y. 297; *Young* v. *Commissioners*, 2 Nott & M. 538;
*Nobles* v. *Langley*, 66 N. C. 287; *Tyson* v. *Commissioners*,
28 Md. 510; *Walter* v. *Commissioners*, 35 Md. 385; *Ball*
v. *Winchester*, 32 N. H. 435. On the same principle, mil-
itary commanders are not, in general, responsible to third
persons for acts done within the line of their duty or in

execution of their orders.  *Hough* v. *Hoodless*, 35 Ill. 166 ;
*Wall* v. *McNamara*, MS. cited in 1 Term Rep. 502, 536 ;
*Wall's Case*, 28 How. St. Tr. 144, 176 ; *Luther* v. *Borden*, 7 How. 46 ; *Dinsman* v. *Wilkes*, 12 How. 403 ; *Wilson* v. *McKenzie*, 7 Hill, 95 ; *Fisher* v. *McGirr*, 1 Gray, 45 ;
*Dynes* v. *Hoover*, 20 How. 80, 81 ; *Ex parte Watkins*, 3 Pet.
208; *Wise* v. *Withers*, 3 Cranch, 337 ; *Wolton* v. *Gavin*,
16 Q. B. 52.

On the other hand, there is a class of officers who, under
the law governing their offices, assume, by accepting their
offices, duties towards the public distributively, to be per-
formed on request of any person who may apply therefor,
either with or without the payment of a prescribed fee.
To this class belong sheriffs, coroners, constables, inspect-
ors of meats, and the like.  At the same time, some of
these officers, as for instance sheriffs and constables, act in
a relation where the duties which they perform are strictly
duties which they owe to the public in its aggregate or cor-
porate character, that is to the state or municipal corpora-
tion whose officers they are.

The distinction between these two classes of duties may
well be illustrated by the case of a sheriff.  If the sheriff
negligently fails to call out the power of the county to
suppress a riot, and in consequence of this a person is in-
jured, such person can unquestionably maintain no action
against the sheriff, for the duty which the sheriff has vio-
lated was a duty which he owed to the state, that is the
public collectively, and not to the public distributively.
But if one who has recovered a civil judgment against
another take out a writ of *fieri facias*, and place it in the
hands of the sheriff for execution, and he fail through
negligence to execute the same, he is liable to the person
who has thus requested of him the performance of his duty.
As to a like liability on the part of recorders of deeds, see
*Houseman* v. *Girard, etc., Asso.* (81 Pa. St. 256) ; *McCar-*

*aher* v. *The Commonwealth* (5 Watts & S. 21); *The Commonwealth* v. *Harmer* (6 Phila. 90).

The principal conflicts presented by the decisions in respect of the liability of public officers and public contractors to third persons for non-feasance relates to the very subject we are considering — the liability of overseers or surveyors of highways, or contractors for the building of bridges or the repairing of canals, and of the incorporated trustees of docks, harbors, or other public works. Thus, the principle that an overseer of highways is not liable for damages sustained by a third person, through his neglect to keep the highway in repair, was declared in New York, at an early day, in an opinion enforced by the learning and authority of Chancellor Kent, sustained by the unanimous concurrence of the members of the Court for the Correction of Errors. *Bartlett* v. *Crozier*, 17 Johns. 439 (reversing *s. c.*, 15 Johns. 250). But this principle was found to work such great inconvenience to private rights that the court of appeals in that state refused to extend it so as to exempt from liability to such action canal contractors who, under engagements with the state, had assumed the duty of keeping in repair portions of the Erie Canal, and who had been placed in full possession of the canal for that purpose. It was held that owners of vessels paying tolls to the state for the privilege of navigating the canal, if injured through the neglect of the contractors to keep the canal in repair, might maintain an action against them for the resulting damages. *Adsit* v. *Brady*, 4 Hill, 630; *Fulton Fire Ins. Co.* v. *Baldwin*, 37 N. Y. 648; *Robinson* v. *Chamberlain*, 34 N. Y. 389; *Conroy* v. *Gale*, 5 Lans. 344 (affirmed 47 N. Y. 665); *Stack* v. *Bangs*, 6 Lans. 262; *Johnson* v. *Belden*, 2 Lans. 433 (affirmed 47 N. Y. 130).

If the doctrine of these cases be sound, they are sufficiently in point to warrant us in holding that the petition in this case states a good cause of action; for this petition

presents nothing more than an action against the defendant, in its character of a contractor for the repairing of public lamps, for an injury sustained by the plaintiff through a negligent non-performance of that duty.

The English cases present the same conflict of judicial opinion on the precise question we are considering. On the one hand, we have the decision of the Court of Excheq-uer Chamber in *Young* v. *Davis* (2 Hurl. & Colt. 197, affirming *s. c.* 7 Hurl. & N. 760), to the effect that a sur-veyor of highways, appointed under the statute William IV., ch. 50, is not liable for damages resulting from an acci-dent to a traveller, caused by the neglect of such surveyor to keep the highway in suitable repair. The grounds on which that decision was placed were not so much the strict and logical rule of law that the surveyor owed no duty except to the public in its aggregate character, as a view that it would be impolitic and dangerous to allow such actions to be maintained. This view was well expressed by Chief Baron Pollock in the course of his opinion in the court of exchequer chamber: "If the plaintiff should succeed, we should enlarge the sphere of litigation, and render it difficult to find persons willing to discharge the duties of surveyors of highways; for the practical result would be that a surveyor of highways would become a sort of an insurer of every person who travelled along the road, and not a single accident would happen without an action being brought against him. In my opinion, the judges ought to consider the consequences of their decisions as regards a multiplicity of actions, and not to open an end-less flood of litigation." The reason of the rule as thus stated did not apply in the case where the reparation of highways, docks, or other public works was committed to incorporated boards of trustees who had the power of raising funds for the purpose, either by the levying of taxes or of tolls. This was settled in the leading case of the *Mersey Docks Trustees* v. *Gibbs* (L. R. 1 H. L. 93, affirming the

decision of the Exchequer Chamber, 5 H. & L. 719, reversing that of the Court of Exchequer, 3 Hurl. & N. 164, and 1 Hurl. & N. 139). It was there held that incorporated trustees of a public harbor, having, under the statute which defined their duties, power to keep a certain harbor in repair and to receive tolls for the use of the same from the owners of the vessels which might enter the same, were liable to the owner of a vessel which had entered the same, for damages happening to his vessel in consequence of their negligence in failing to keep the harbor in suitable repair. A reading of that case will show that the decision was placed upon the precise ground upon which private corporations operating canals, turnpikes, or other public works, and receiving tolls from individuals for the use of the same, are liable to such individuals for damages happening to the latter through the failure of the former to keep them in suitable repair. The principle was that the payment of tolls gave the party injured the right to demand of such incorporated trustees reasonable diligence, to the end that he should get what he paid for, the privilege of using a reasonably safe harbor. This will appear from the following language of Mr. Justice Blackburn, in delivering the opinion of the judges in answer to the questions propounded by the Lords : " It is obvious that a ship-owner who pays dock-rates for the use of the docks, or the owner of goods who pays warehouse-rates for the use of a warehouse and the service of warehousemen, is, as far as he is concerned, exactly in the same position, however the rates may be appropriated. He pays the rates for the dock accommodation, or for warehouse accommodation and service, and he is entitled to expect that reasonable care should be taken that he shall not be exposed to danger in using the accommodation for which he has paid." It is thus seen that the liability of these *quasi* public officers to individuals is placed upon precisely the same footing as that of public warehousemen, public carriers, proprietors of

public canals, bridges or turnpikes, and all other private persons or corporations who, for pecuniary gain or other private advantage, take upon themselves the performance of public duties, for the benefit of individual members of the public who may solicit the performance thereof and pay them a reward therefor. The fact of the payment of the reward, or of the legal obligation to pay the same, for the particular service solicited and rendered, raises a duty on the part of the person or corporation rendering the service, in favor of the person soliciting it, to use reasonable care in its performance. They are drawn into a relation analogous to that of privity of contract, and in some cases, as in that of a non-performance of duty by a public carrier, the injured person may bring his action either upon the contract or upon the duty raised by the law. The leading English case, where this right of action is held to exist, was the case of *Parnaby* v. *Canal Co.* (11 Ad. & El. 223). The American cases are so numerous where the incorporated proprietors of turnpikes, plank roads, bridges, ferries, railways, telegraphs, canals, wharves, and gas-works, have been held liable for such non-feasance, that it would be an useless labor to cite them. But this great mass of decisions is not relevant to the point here under consideration, because this plaintiff, at the time of receiving the injury of which he complains, had not been drawn into any sort of privity with the defendant, or acquired the right to demand diligence on the part of the defendant in the performance of any duty to him, by the payment of tolls to the defendant, for the use of any public works owned or operated by it, or for the performance of any duty which the defendant had engaged to perform on behalf of the members of the public who should apply therefor.

The law does, however, give a right of action in one class of cases upon a principle which, if extended, would uphold the plaintiff's right of action in this case, and

that is the right of action which a traveller has against a municipal corporation who is injured by the negligent failure of such corporation to keep its streets in repair. This right of action, it is true, is denied in some of the states, but in most of them, as in this state, it is allowed to exist; and an examination of the early decisions, where its existence was controverted, will show that the doctrine takes root in the case of *Henly* v. *Mayor* (reported 5 Bing. 91; 3 Moo. & P. 278; in error to King's Bench, 3 Barn. & Adol. 77; in the House of Lords, 2 Cl. & Fin. 331; 1 Bing. N. C. 222; 8 Bli. (N. R.) 690; 1 Scott, 29). In that case, the corporation of Lyme Regis had accepted a grant of franchises from the crown, on the condition, among other things, of keeping a certain sea wall in repair. They did not discharge this duty, and the sea burst in and overflowed the lands of a private person. It was held in the House of Lords that he was entitled to maintain an action for the damages against the municipal corporation. Now, the principle of that case was not different from the principle which the plaintiff invokes in this case. By accepting the grant from the crown on the condition named, the municipal corporation had engaged with the crown to discharge a certain duty *for the benefit and protection of the individual inhabitants of the town,* and it was held that one of such inhabitants, injured by the failure of the corporation to discharge this duty, that is, in effect, to perform the contract with the crown, might maintain an action against the corporation for the damages which he had thereby suffered. In that case, the Mayor and Burgesses of Lyme Regis were sued by an individual for the non-performance of their duty, as public contractors for the reparation of a sea wall. In this case the Laclede Gas-Light Company is sued by the plaintiff for the non-performance of its duty as a public contractor for the reparation of public lamps. The principle which upheld the action in that case will uphold it in this; and it is precisely the principle which

would have upheld the plaintiff's action (assuming that he had a right of action) if, instead of suing this defendant, he had sued the city of St. Louis for the same injury. That principle is that, by accepting its charter from the state, which committed to it the property and control of public highways within its boundaries, the city of St. Louis impliedly engaged with the state to exercise reasonable diligence in keeping those highways in repair for the benefit of the citizens of the state, and of all other persons who might lawfully use the same.

It is thus seen that there are lines of decisions which proceed upon principles which deny the plaintiff's right of action as stated in his petition, and other lines of decisions which proceed upon principles which uphold it. In the absence of controlling authority upon the precise question, we are at liberty to adopt either, according to our views of the principle which is best calculated to subserve the ends of justice and to promote the public interest. Our opinion is that the contract declared upon, as recited in the petition, raises, on the part of the defendant, a public duty to be performed for the benefit of the inhabitants of St. Louis distributively, and that, for the negligent non-performance of this duty, an action will lie, either by the city of St. Louis suing upon the contract, or by any individual specially damaged thereby, proceeding as for the non-performance of a public duty, and setting up the contract by way of inducement. It follows that we are of opinion that the plaintiff's petition sets forth a substantial cause of action.

2. But upon the merits of the case, we are constrained to say that this cause of action has not been established by the evidence. It appears that a lamp post, which the defendant was under a duty by its contract with the city to keep in repair, had been knocked down by a runaway team at four o'clock in the afternoon, and had fallen diagonally across the sidewalk. A policeman who saw it knocked

down swung the end of it around so that it lay on the outer edge of the sidewalk along the curbstone, and then immediately reported the fact at the police station. The distance from the lamp post to the defendant's office was five squares. There was no evidence that the fact was reported at the defendant's office until the following day; but another policeman testifies that, about seven o'clock of that evening, he saw a man named Devine, together with another man whom he did not know, at the scene of the accident with a shovel and pick working at the lamp post. The officer had known Devine for a number of years; he generally saw him working around the gas lamps within the district in which the defendant, under its contract with the city, had undertaken to keep the lamps in repair. The officer did not know whether these men were in the employ of the defendant or not, except from the circumstance that he had seen Devine working about the lamps.

It was in evidence that, under the contract between the defendant and the city, the defendant was bound to commence lighting the lamps within its district at 6:30 in the evening, and to complete the lighting of them by 7:15. The plaintiff walking along the sidewalk at about 7:30 p. m., fell over this prostrate lamp post and sustained the injury complained of.

Upon this evidence the court put the case to the jury upon the following instruction: "The court instructs the jury that it was the duty of the Laclede Gas-Light Company to keep and maintain the lamp post mentioned in the petition in good condition; and if they believe from the evidence that said defendant, its agents or servants, had notice that said post was broken down, and defendant failed to have the same removed, guarded, or lighted so as to ward off danger, and it had reasonable time to do so after said notice and before the injury, the said defendant was guilty of negligence; and if they believe that plaintiff, in walking along said street, in the usual place or places for pedestri-

ans, fell over said post, and without fault on his part, was thereby injured, they will find for the plaintiff.'' It will be perceived that this instruction left it to the jury to say (1) whether the defendant had notice, and (2) whether its agents or servants had notice of the accident in time to have the fallen post removed, guarded, or lighted, so as to ward off danger. It may be observed, in the first place, that this instruction is erroneous in point of law, because there are many cases where notice to the agents and servants of a corporation will not be notice to the corporation itself, so as to charge it with liability. In order that notice to the servant or agent of a corporation shall affect the corporation itself with notice, the notice must relate to something within the scope or employment of such agent or servant. Now, in the first place, there is no evidence at all that either of the men whom the policeman saw with the shovel and pick at seven o'clock in the evening in question were in the employ of the defendant, much less that they were its agents or servants under such an employment or agency that notice to them would be notice to the company. The fact that they, on this occasion, undertook to do something to the fallen lamp post does not tend to show that they were in the employ of the defendant at the time, because any laborer passing along the street with a shovel and pick might, out of a desire to promote the public safety, stop and endeavor to remove such an obstruction from the sidewalk. Nor does the fact that a policeman had seen one of these men on former occasions working about the street lamps within the defendant's district, at all tend to show that he was in the employ of the defendant, either when thus seen working about the street lamps, or on the evening of this accident. He might have been, on those occasions, an employe of a sub-contractor under the defendant, and not under the defendant's orders, or in any relation of privity with the defendant; and the testimony given at the former trial indicates that this was the fact. We do not

refer to this former testimony with the idea that it can be made in any sense the basis of our decision in this case, but we refer to the fact as there disclosed, merely for the purpose of showing the impropriety of a rule of evidence which would raise the presumption that this man was in the employ of the defendant, and charged with such duties as would make notice to him that a lamp post within the defendant's district had fallen down, a notice to the defendant. Again, this man might well have been in the employ of the defendant on former occasions, and yet he may have been discharged from its employ on the occasion in question. On this occasion the policeman saw him at the fallen lamp post but a moment, did not really wait to see what he was doing, but passed a word or two with him, and went on. Then, we know of no principle of law, and no fact is proved, touching the employment of lamp-lighters by this defendant, which would make the knowledge of such persons that a lamp post had fallen down the knowledge of the defendant. The persons employed to light these lamps may not have been the servants of the defendant at all. They may have been servants of an independent contractor under the defendant; but if they were the servants of the defendant in such a sense that they were bound to inform the defendant that a lamp post had fallen upon the sidewalk, and to take measures to remove, guard, or light the same, so that it would not be dangerous to travellers, they were not, as we held when the case was here before, bound to suspend the lighting of their lamps in order to attend to this duty. They were allowed, by the defendant's contract with the city, and the schedule of time for the lighting of the lamps which had been prescribed by the city thereunder, until 7 :15 p. m. for the lighting of the lamps on that night. There is no evidence that any of them completed the task before that hour. Assuming that the task was completed at that hour, and that their employment was such that they were under the duty of at once giving atten-

tion to this fallen lamp post, there remained an interval of but fifteen minutes between that time and the time of the accident in which to attend to this duty. It ought not to have been left to the jury to say that this was a reasonable time. The court ought, as requested by the defendant, to have instructed the jury as matter of law, that it was not a reasonable time. The defendant offered instructions which, though argumentative, ended by peremptory directions to the jury to find for the defendant. As there was no evidence of negligence to take the case to the jury, it was error to refuse these instructions. It is no objection to a peremptory instruction, where such an instruction is proper, that it is argumentative; since the argumentative part is necessarily addressed to the court only.

We, therefore, reverse the judgment and remand the cause. All the judges concur.